```
 1                  UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3                  HONORABLE OTIS D. WRIGHT, II

 4             UNITED STATES DISTRICT JUDGE PRESIDING

 5   UNITED STATES OF AMERICA,        )
                                      )
 6                  Plaintiff,        )
                                      )  CR 14-00702-ODW-1
 7         vs.                        )
                                      )
 8   JIAN SHENG TAN, et al.,          )
                                      )
 9                  Defendants.       )
     _____)
10   UNITED STATES OF AMERICA,        )
                                      )
11                  Plaintiff,        )
           vs.                        )  CR 15-00103-ODW-1
12                                    )
     TSUNG WEN HUNG, et al.,          )
13                                    )
                    Defendants.       )
14   _____)
     UNITED STATES OF AMERICA,        )
15                                    )
                                      )
16                  Plaintiff,        )  CR 15-00662-ODW-1
                                      )
17         vs.                        )
                                      )
18   TU CHAU LU, et al.,              )
                                      )
19                  Defendants.       )
     _____)
20   UNITED STATES OF AMERICA,        )
                                      )
21                  Plaintiff,        )
                                      )  CR 15-00701-ODW-1
22         vs.                        )
                                      )
23   JIM SHENG LE, et al.,            )
                                      )
24                  Defendants.       )
     _____)
25
```

1

2                         REPORTER'S TRANSCRIPT OF
             STATUS CONFERENCE RE PROTECTIVE ORDER
3                    THURSDAY, JANUARY 28, 2016
                              3:44 P.M.
4                       LOS ANGELES, CALIFORNIA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22    _____

23           DEBI READ, CSR 3949 CRR RMR RDR
           FEDERAL OFFICIAL COURT REPORTER
24            312 NORTH SPRING STREET 432A
           LOS ANGELES, CALIFORNIA 90012
25               READIT3949@GMAIL.COM

1                        A P P E A R A N C E S

2    ON BEHALF OF THE GOVERNMENT:

3        **KAREN I. MEYER, AUSA**
         Office of the U.S. Attorney
4        312 North Spring Street 15th Floor
         Los Angeles, CA 90012-4700
5
         **ANDREW L. CREIGHTON, AUSA**
6        U.S. Department of Justice
         Criminal Division
7        1301 New York Avenue, NW, Suite 700
         Washington, DC 20005
8
     ON BEHALF OF THE DEFENDANT TU CHAU LU AND SPECIALLY APPEARING
9    FOR THE DEFENDANT RICHARD CHEUNG:

10       **MICHAEL ROGER McDONNELL, ESQ.**
         Law Offices of Michael McDonnell
11       418 East La Habra Boulevard
         La Habra, CA 90631
12
     ON BEHALF OF THE DEFENDANT JESSICA LI:
13
         **RICHARD G. NOVAK, ESQ.**
14       Law Offices of Richard G. Novak
         65 North Raymond Avenue, Suite 320
15       Pasadena, CA 91103

16   ON BEHALF OF THE DEFENDANT JIM SHENG LEE:

17       **PATRICK S. AGUIRRE, ESQ.**
         Law Office of Patrick S. Aguirre
18       7847 Florence Avenue, Suite 107
         Downey, CA 90240
19
     ON BEHALF OF THE DEFENDANT DU TRONG NGUYEN:
20
         **MICHAEL M. CRAIN, ESQ.**
21       Michael M. Crain Law Offices
         PO Box 3730
22       Santa Monica, CA 90408

23

24

25

```
 1                A P P E A R A N C E S   (continued)

 2   ON BEHALF OF THE DEFENDANT JIAN SHENG TAN:

 3       GEORGINA WAKEFIELD, DFPD
         Federal Public Defenders Office
 4       321 East 2nd Street
         Los Angeles, CA 90012-4202
 5
     ON BEHALF OF THE DEFENDANT TOM HUYN:
 6
         RICHARD M. CALLAHAN, JR., ESQ.
 7       Richard M. Callahan, Jr. Law Offices
         225 South Lake Avenue, Suite 300
 8       Pasadena, CA 91101

 9   ON BEHALF OF THE DEFENDANT MINA CHAU AND SPECIALLY APPEARING
     FOR THE DEFENDANT EDWARD KIM:
10
         KAREN L. GOLDSTEIN, ESQ.
11       Law Offices of Karen L. Goldstein
         1645 North Vine Street, Suite 306
12       Los Angeles, CA 90028

13   ON BEHALF OF THE DEFENDANT BEN HO:

14       DIANE C. BASS, ESQ.
         Law Office of Diane C. Bass
15       100 Spectrum Center Drive, Suite 520
         Irvine, CA 92618
16
     ON BEHALF OF THE DEFENDANT DERRICK CHEUNG:
17
         JOHN L. CARLTON, ESQ.
18       Medrano & Carlton
         225 South Lake Avenue, Suite 300
19       Pasadena, CA 91101

20   ON BEHALF OF THE DEFENDANT LIEN TRAN:

21       EDWARD M. ROBINSON, ESQ.
         Law Offices of Edward M. Robinson
22       21515 Hawthorne Boulevard, Suite 665
         Torrance, CA 90503
23

24

25
```

1          A P P E A R A N C E S   (continued)

2    ON BEHALF OF THE DEFENDANT LUIS KRUEGER:

3        **MARK ALLEN CHAMBERS, ESQ.**
         14241 Firestone Boulevard, Suite 400
4        La Mirada, CA 90638

5    ON BEHALF OF THE DEFENDANT VIVIAN TAT AND SPECIALLY APPEARING
     FOR RUIMIN ZHAO:
6
         **KEVIN SCOTT ROSENBERG, ESQ.**
7        Lowenstein & Weatherwax LLP
         1880 Century Park East, Suite 815
8        Los Angeles, CA 90067

9    ON BEHALF OF THE DEFENDANT JACK NGUYEN:

10       **GRANT B. GELBERG, ESQ.**
         Huang Ybarra Singer & May LLP
11       550 South Hope Street, Suite 1850
         Los Angeles, CA 90012
12
     ON BEHALF OF THE DEFENDANT PABLO VELASCO HERNANDEZ:
13
         **MICHAEL S. MEZA, ESQ.**
14       Michael S. Meza Law Offices
         333 City Boulevard West, 17th Floor
15       Orange, CA 92868

16   ON BEHALF OF THE DEFENDANT TSUNG WEN HUNG AND SPECIALLY
     APPEARING FOR HUA LEUNG:
17
         **STEPHANIE AMES, ESQ.**
18       Law Offices of Stephanie Ames
         12100 Wilshire Boulevard, Suite 800
19       Los Angeles, CA 90025

20   ALSO PRESENT:  SHIRU HONG, Mandarin Interpreter
                    SHARON SPENCE, Spanish Interpreter
21                  ROBERT B. NGUYEN, Vietnamese Interpreter
                    BARBARA HONG LI, Cantonese Interpreter
22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, JANUARY 28, 2016

 2                             3:44 P.M.

 3                              -o0o-

 4              (Call to Order of the Court.)

 5              THE COURTROOM DEPUTY:  Okay.  Calling Item 3,

 6   CR 14-702, United States of America versus Jian Tan, et al.;

 7   calling Item 4, CR 15-103, United States of America versus

 8   Tsung Hung, et al.; calling Item 5, CR 15-662, United States of

 9   America versus Tu Chau Lu, et al.; and calling Item 6,

10   CR 15-701, United States of America versus Jim Lee, at al.

11        Counsel, may I have all of your appearances, please.

12              MS. MEYER:  Good afternoon, Your Honor.

13        Kim Meyer and Andrew Creighton from the Department of

14   Justice on behalf of the United States.

15              THE COURT:  Welcome.

16              MR. MCDONNELL:  Good afternoon, Your Honor.

17        I'm Mike McDonnell.  I represent Tu Chau Lu, Number 1 on

18   the -662 case.  And I'm asking -- he has a waiver on file, by

19   the way.

20        I'm asking to stand in for Allen Eisner on -662 on behalf

21   of his client, Richard Cheung, who is out of custody beside me

22   being assisted by the Mandarin interpreter, and he is Number 15

23   on -662.

24              THE COURT:  Thank you, counsel.

25              MR. NOVAK:  In no particular order, good afternoon,
```

1    Your Honor.

2        Richard Novak.  I represent Jessica Li, L-i.  She's

3    Defendant Number 4 in 15-103, and she's Defendant 13 in 15-662,

4    and there are waivers of her presence on file, and she is not

5    present.

6            THE COURT:  All right.  Thank you.

7            MR. AGUIRRE:  Your Honor, good afternoon.

8        Patrick Aguirre.  I represent Jim Lee, and he is part of

9    case ending in -701.  There's also a waiver of his presence on

10   file.

11           THE COURT:  Thank you, sir.

12           MR. AGUIRRE:  Thank you.

13           MR. CRAIN:  Good afternoon, Your Honor.

14       Michael Crain on behalf of Mr. Du Truong Nguyen who's

15   present on bond with the Vietnamese interpreter assisting him,

16   and that's on -662, the Lu case.  He's Number 14.

17           THE INTERPRETER:  Vietnamese interpreter Robert

18   Nguyen, N-g-u-y-e-n, certification number 300202 --

19           THE COURT:  Thank you.

20           THE INTERPRETER:  -- for Mr. Huynh and Mr. Nguyen.

21           THE COURT:  Thank you.

22           MS. WAKEFIELD:  Good afternoon, Your Honor.

23       Georgina Wakefield on behalf of Jian Sheng Tan who has a

24   waiver of presence on file.  He's not here.  He's on case

25   number 14-702, 15-103, and 15-701.

```
 1            THE COURT:  Good afternoon, Ms. Wakefield.
 2            MS. WAKEFIELD:  Thank you, Your Honor.
 3            MR. CALLAHAN:  Your Honor, good afternoon.
 4       Richard Callahan on behalf of Tom Huynh, Defendant
 5  Number 9 in the -662 indictment.  He is present.
 6            THE COURT:  Mr. Callahan, good afternoon.
 7            MS. GOLDSTEIN:  Good afternoon, Your Honor.
 8       Karen Goldstein on behalf of Mina Chau in -662.  She's
 9  Defendant Number 7.  There is a waiver on file.
10       I'm also appearing for Mark Kassabian who represents
11  Edward Kim in the same indictment, -662.  He's Number 3.  And
12  there is a waiver on file.
13            THE COURT:  Thank you, counsel.
14            MS. BASS:  Good afternoon, Your Honor.
15       Diane Bass representing Ben Ho on the -662 indictment.  He
16  is Number 8, and there is a waiver of appearance on file.
17       And just to alleviate any stress you may be feeling, I
18  will be speaking on behalf of all the defense counsel today.
19            THE COURT:  Outstanding.  You come sit next to me.
20            MR. CARLTON:  Good afternoon, Your Honor.
21       John Carlton appearing on behalf of Defendant Derrick
22  Cheung who is Defendant Number 3 in the -103 case, and there is
23  a waiver on file.
24            THE COURT:  All right.  Thank you, counsel.
25            MR. ROBINSON:  Your Honor, good afternoon.
```

1    Edward Robinson for Lien Tran.  There's a waiver on file.

2    She's Number 16 in the -662 indictment.

3              THE COURT:  Thank you.

4              MR. CHAMBERS:  Afternoon, Your Honor.

5    Mark Chambers on behalf of Mr. Krueger.  He's present

6    before the Court on bond.  He's on case -662.

7              THE COURT:  Mr. Chambers, thank you.

8              MR. CHAMBERS:  Thank you, Your Honor.

9              MR. ROSENBERG:  Good afternoon, Your Honor.

10   Kevin Rosenberg for Defendant Vivian Tat on the -702

11   indictment.  She's Defendant Number 2.  There is a waiver on

12   file and she's not present.

13   I'm also making a special appearance for Oliver Cleary for

14   Defendant Ruimin Zhao on the same indictment.  She's defendant

15   Number 3.  She is present.  She is being assisted by Cantonese

16   interpreter Barbara Li.

17             THE COURT:  All right, Mr. Rosenberg.  Thank you.

18             MR. ROSENBERG:  Thank you, Your Honor.

19             MR. GELBERG:  Good afternoon, Your Honor.

20   Grant Gelberg on behalf of Jack Nguyen.  He's present and

21   on bond.  He's Defendant Number 11 in case number 15-CR-662.

22             THE COURT:  Thank you, gentlemen.

23             MR. MEZA:  Good afternoon, Your Honor.

24   Mike Meza on behalf of Pablo Hernandez, case -662.  He's

25   Defendant Number 5.  He's present in custody being assisted by

```
 1    the Spanish-language interpreter.
 2                MS. AMES:  And good afternoon, Your Honor.
 3          Stephanie Ames appearing for Defendant Tsung Wen Hung who
 4    is Number 2 on indictment number -662.  He is also Defendant
 5    Number 1 on indictment number -103.  There is a waiver on file.
 6          I am also specially appearing for attorney Chad Nardiello.
 7    His client's name is Dee Hua Leung.  She's on indictment number
 8    -701.  Thank you.
 9                THE COURT:  Thank you, Ms. Ames.
10          Is that it?  Okay.  You all go find a seat.
11          Let me hear from the government first.  I got it
12    secondhand and I was surprised that there was actually an
13    issue.  So why don't you articulate the real problem for me.
14                MS. MEYER:  Your Honor, my understanding -- and I'm
15    sure that defense counsel will correct me if I'm wrong -- but I
16    believe that the primary dispute is over the language of
17    paragraph 4(e) of the application and the corresponding
18    paragraph 7 of the proposed order.  They are identical.  And it
19    has to do with whether or not their clients, whether or not
20    they are in custody, can retain in their possession copies of
21    the discovery.
22                THE COURT:  That's what I thought it was and I
23    couldn't believe it.  New Year's resolution -- calmly.
24          Yes.  Can I please have the justification for that?
25                MS. BASS:  Your Honor --
```

1       THE COURT:  I want you to keep something in mind.

2       MS. BASS:  Yes.

3       THE COURT:  I've started rewriting these protective

4  orders to the extent that I don't want defendants to even have

5  recording devices on them when they're exposed to this

6  material, much less pen and pencil.  I don't want cell phones.

7  I don't want any other recording devices period.  Otherwise,

8  it's a joke.

9       MS. BASS:  I will tell you our justification, Your

10 Honor --

11      THE COURT:  Okay.

12      MS. BASS:  -- for our request.  First of all, the

13 materials are redacted, so we are actually starting with the

14 threshold issue that we don't believe that a protective order

15 is even necessary because the identity of the informant is not

16 disclosed in the discovery.

17     Additionally, many of the defendants have had face-to-face

18 contact with the informant, so they already know who the person

19 is.

20      THE COURT:  Uh-huh.

21      MS. BASS:  However, the main issue that we have is

22 effective assistance of counsel.

23      THE COURT:  Uh-huh.

24      MS. BASS:  Ms. Meyer has indicated that the first

25 wave of discovery contains approximately 200 hours of videos,

1    5,000 pages of transcripts, and additional audio and video

2    files.  What the government is requiring us to do by means of

3    this protective order is either we sit with our clients in our

4    offices with the discovery while they go through it or somebody

5    from our defense team.

6         We have, I think, a relatively even mix of retained and

7    appointed counsel in this case.  For retained counsel, I don't,

8    certainly, have a staff that can spend 200-plus hours with my

9    client, and this would require me to spend evenings and

10   weekends with my client for God knows how long going through

11   the discovery, since he works.

12        With respect to CJA counsel, this would require either the

13   attorneys or their appointed paralegals to spend at least

14   200 hours with their clients going through the materials which

15   would cost the court tens of thousands of dollars in CJA funds.

16   And I was a CJA panel attorney for many years; I'm sensitive to

17   those issues.

18        So, Your Honor, essentially what we are attempting to do

19   is provide representation to our clients, allow them to go

20   through the discovery on their own in their own time in their

21   homes, then we can have meaningful conversations.

22        But I believe that there is not a compelling enough

23   government interest in this particular situation in light of

24   the circumstances that outweighs the need to provide effective

25   assistance to our clients in this case.  It's just overly

1    burdensome.

2              THE COURT:  Okay.

3              MS. MEYER:  Your Honor, I'm sorry.  If I may just

4    make one correction --

5              THE COURT:  No, I was going to hear from you right

6    now.

7              MS. MEYER:  -- to something that Ms. Bass said.  She

8    said in their office it would require either her or counsel or

9    a member of the defense team to sit with their client.  That is

10   actually not how the provision reads.  It basically requires

11   the defendant to review the materials either in the offices of

12   their defense team -- so no member of the defense team has to

13   be sitting at their side -- or, if it's outside of the office,

14   then the -- a member of the defense team would have to retain

15   it in their possession.

16             MS. BASS:  Well, Your Honor, we did have a defense

17   meeting before court today so we could all be on the same page,

18   which was when I was elected to speak to you, and essentially

19   many of the defendants have jobs which would require somebody

20   to be in the office in the evenings and weekends.  I'm not

21   there unless I have to be, and certainly there is no one else

22   in the office in evenings and weekends.  So this is a

23   distinction with meaning in this particular case.

24         Additionally, Your Honor, I just want to point out that we

25   have also discussed the fact that there is -- in fact, the case

1    I believe that you just took the plea on, *USA v. Bracken,*

2    CR 13-882, there is redacted -- redacted discovery, there are

3    many CIs.  It's a drug conspiracy case and there's no

4    protective order in that case.

5         My understanding in *USA v. Martinez*, CR 14-338, which is

6    in Judge Otero's court, it's a RICO gang case with multiple

7    CIs, it's a drug trafficking case, and there's a hard drive.

8    The MDC has all the discovery on the computer.

9         So this is not that case.  There are RICO allegations, but

10   it is mostly, I think, on behalf of many of the defendants, a

11   white collar case.

12            THE COURT:  You ever been a victim of a white collar

13   crime?  Not yet?

14            MS. BASS:  Not yet.

15            THE COURT:  Not yet?

16            MS. BASS:  I'm just talking about danger, Your

17   Honor.  That's all I'm addressing at this point.  And I think

18   that is, obviously, the government's concern is that they don't

19   want the CI to be endangered.  I've had many cooperating

20   clients and I completely respect that.

21            THE COURT:  Is that what you're worried about?  The

22   CI?  Or you worried about people's bank records and being

23   further victimized?  What's your concern?

24            MS. MEYER:  Your Honor, that too.  I mean, we did

25   cover the bank records as well.  But the import of the

```
 1   protective order is the protection of the confidential sources
 2   in the case.
 3            MS. BASS:  May I make a suggestion?  I don't want
 4   to --
 5            THE COURT:  I'd like to reach a compromise.
 6            MS. BASS:  That's what I was going to propose.
 7            THE COURT:  I'll tell you, I don't really care about
 8   some of the concerns you raise, but I do want them to be able
 9   to provide the attorneys with whatever assistance they have.
10   But I'm worried about safety and security of everyday ordinary
11   citizens even more than CIs, okay?  So tell me how I can do
12   that.
13            MS. BASS:  Let us give the clients videos or
14   recordings, but not documents.
15            THE COURT:  Is that a problem?
16            MS. BASS:  I haven't talked to counsel about that.
17   I see a couple of people nodding.
18            THE COURT:  It sounds like -- it sounds like a
19   decent idea.  Is that all right?
20            MS. BASS:  We don't care about bank records.  I
21   don't care to give my clients bank records.
22            THE COURT:  Okay.
23            MS. BASS:  We're just really -- it's 200 hours of
24   videos and transcripts; that's our main concern.
25            THE COURT:  I got you.  Hang on.
```

1          MS. MEYER:  Your Honor, I want to raise a couple
2    concerns regarding that.
3          THE COURT:  Even videos?  Okay.
4          MS. MEYER:  And I would like some time to mull it
5    over.  But the videos, there are glimpses of the confidential
6    sources in those videos.
7          THE COURT:  Fix it.
8          MS. MEYER:  I'm sorry?
9          THE COURT:  Fix it.
10         MS. BASS:  You have the technology.
11         THE COURT:  Yeah.  You can fix it.  I can't, but
12   someone under 30 can.
13         MS. MEYER:  Your Honor -- and I would certainly make
14   an attempt to do that.  I will tell you that the government was
15   prepared with the discovery once the Court entered the order.
16   Going back and finding those glimpses --
17         THE COURT:  They're asking for it.
18         MS. MEYER:  -- will take some time.
19         THE COURT:  They understand that.  I was prepared to
20   just say no, okay?  But we're going to reach a compromise,
21   okay?
22         MS. BASS:  Great.  Great.
23         THE COURT:  So I don't have to worry about the bank
24   records, right?  You're not interested in bank records?
25        Okay.  Good.  I feel a whole lot better.

1          Yes, sir?

2                MR. MCDONNELL:  I think what we're saying is we're

3     not interested in sharing it with our clients.

4                MS. BASS:  Right.

5                THE COURT:  Okay.  Gotcha.  That's what I'm worried

6     about.

7                MS. BASS:  All we want to do is be able to give them

8     the recording so we don't have to hold their hand.

9                THE COURT:  All right.  Well, you've asked for that.

10    It's going to take some time now to alter them.

11                MS. BASS:  Recordings and transcripts.  If I may

12    just -- maybe Ms. Meyer and I can speak for a second -- but my

13    understanding, again, is that many of the defendants -- I know

14    my client had conversations with the CI, so he knows who that

15    person is at least by sight.  So I don't know if that's an

16    issue unless --

17                MS. MEYER:  The issue has to do with distribution,

18    Your Honor, the paper trail, the photos.  I understand that the

19    defendants once probably before getting the discovery will have

20    an idea of who they met with, but the point is distribution.

21    And once it gets out of the lawyers' hands --

22                THE COURT:  Uh-hmm, it's out.

23                MS. MEYER:  -- there's no control.  And the fact is

24    there's no remedy because once it's out, it's out.

25                THE COURT:  I know.  That's why we're having all of

1    this.

2              MS. MEYER:  Uh-huh.

3              THE COURT:  Okay?  And I do realize that you don't

4    get to be a CI without knowing some of the players and being

5    trusted by some of the players, so it's not a surprise that the

6    CIs aren't really incognito.

7        So what we will do is give the government a moment, you

8    know, to get it done.  So if it really is 200 hours, I guess

9    that's probably going to take a second, right?

10             MS. BASS:  Yes, Your Honor.

11             THE COURT:  Okay.  Now, if, as I expect is going to

12   happen, we're going to have to roll the clock back a little

13   bit, I'll do that.  So --

14             MS. BASS:  Your -- I'm sorry.

15             THE COURT:  -- no one is going to be under the gun.

16   I fully expect that we will get waivers from all of your

17   clients.  This is what you're asking for.

18             MS. BASS:  Yes, Your Honor.

19             THE COURT:  And like I said, we'll slide the dates

20   back so that no one is really up against it.  Okay?

21             MS. BASS:  We have been discussing proposed trial

22   dates and we are talking about dates way out.

23             THE COURT:  Okay.

24             MS. BASS:  So that shouldn't be a problem, Your

25   Honor.

1          THE COURT:  Okay.  Everybody leaves happy, right?
2     All right.
3          MS. MEYER:  Your Honor, I just want to make sure
4     that the conversation that we've had with the Court has really
5     been about the videos.
6          MS. BASS:  Yes.
7          MS. MEYER:  The government is still opposed to
8     turning over any transcripts to the clients that they can have
9     outside.
10         THE COURT:  Okay.  What are we talking about now?
11    What kind of transcripts?  Not grand jury --
12         MS. MEYER:  Transcripts of the videos -- the videos
13    and the audios.  So we --
14         THE COURT:  No, no, the evidence is the video, not
15    the transcript.  The evidence is the video.
16         MS. MEYER:  Your Honor, many of the conversations
17    actually were in a foreign language in which case the
18    transcripts will be the evidence.
19         THE COURT:  Ah.
20         MS. BASS:  Your Honor, we need the transcripts.
21         THE COURT:  You need them?
22         MS. BASS:  Well, I think our clients need them, too.
23    I don't know if my client --
24         THE COURT:  You were doing well.
25         MS. BASS:  I know, Your Honor.

```
 1              THE COURT:  You should have stopped.
 2              MS. BASS:  I know.  I know, but I've got people
 3    behind me and shaking their head.
 4              THE COURT:  Okay.  Why is that a problem?  Whose
 5    safety are we worried about now?
 6              MS. MEYER:  The confidential sources, again.
 7              MS. BASS:  Does he say it's the same --
 8              MS. MEYER:  I'm sorry?
 9              MS. BASS:  Does he say his name?
10              THE COURT:  We're going to take out --
11              MS. MEYER:  Yes.
12              THE COURT:  -- the visual depiction of the
13    confidential source, and now you're saying there is -- what? --
14    discussions going out and names being mentioned and --
15              MS. MEYER:  Yes.
16              MS. BASS:  Can that be redacted?
17              THE COURT:  Oh, lord.  Anything can be redacted.
18    You can redact the Declaration of Independence.
19              MS. MEYER:  I will tell you that we have spent many,
20    many hours -- not attorney hours; paralegal hours -- redacting
21    5,000 pages of discovery.  I cannot guarantee that there is not
22    a mistake in there.  And once it's released, it's released, and
23    there is no remedy for the government.
24         Oh, Your Honor, I should mention -- Mr. Creighton actually
25    could have mentioned it as well -- but some counsel have asked
```

1   and I thought it was a reasonable request that we have also

2   provided an index and a guide for each attorney to direct them

3   to where --

4              THE COURT:  Their client is?

5              MS. MEYER:  Yes.  So they don't each have to

6   review --

7              THE COURT:  200 hours.

8              MS. MEYER:  -- all 200.  But they certainly, from

9   the government's prospective, were entitled to all of them.

10             MS. BASS:  Your Honor, I respectfully disagree with

11  Ms. Meyer.  We have a RICO case here where each of the

12  defendants are named in many of the overt acts, even in the

13  counts that they're not charged in, so we are all involved in

14  the entire case.  And this -- each defendant's conduct

15  potentially reaches into many of the different areas of the

16  case.  So I think that that is --

17             THE COURT:  Here's what I want to do.  Like I said,

18  I want to give defense counsel what they need in order to do

19  their jobs.

20      Now how about this?  The government's already done the

21  work.  They can't guarantee that it's 100 percent sanitized.

22  But if the government provides all of this information to you

23  lawyers, then before you lawyers start letting your clients see

24  it, I want you to go through it and make sure that there's no

25  names of CIs on there.  After that, you can open it up.  Okay?

```
 1              MS. BASS:  Right.
 2              THE COURT:  Can I get a promise from the lawyers
 3    that you will do that?
 4              MS. BASS:  Yes, sir.
 5              THE COURT:  Then we have a deal.
 6              MS. BASS:  We have a deal.
 7              THE COURT:  We have a mechanism.
 8         Is the United States of America okay with that?
 9              MS. MEYER:  One moment, Your Honor.
10              THE COURT:  All right.  'Cause we're trying to make
11    America great again.
12              MS. MEYER:  Uh, Your Honor, that's fine with the
13    government with respect to the transcripts, and we will go back
14    through the videos and the 200 hours and extract the images.
15              THE COURT:  The images, right.  Okay.  And with
16    respect to the transcripts, then --
17              MS. MEYER:  I have to say I would like to verify
18    that that can be done.  I will tell you we've had several
19    systems failures over the past week in trying to put this
20    discovery together.  I understand, uh, it should be possible,
21    but I am going to go directly to our IT department after this.
22              MS. BASS:  We'll be patient, Kim.
23              THE COURT:  I'm going to resist.
24         Okay.  Who's going to modify the order requiring that the
25    transcripts be reviewed by counsel outside the presence of the
```

```
 1   defendants for any indication of -- in fact, any identifying
 2   information regarding the CIs?
 3        And once they have satisfied themselves that the
 4   transcripts have been suitably sanitized, then you are free to
 5   turn over those transcripts to your clients.
 6              MS. BASS:  Thank you very much, Your Honor.  We all
 7   appreciate it.
 8              THE COURT:  Okay.  I just want that changed and
 9   we'll sign it.
10              MS. MEYER:  Your Honor, I'll make that change --
11              THE COURT:  Okay.
12              MS. MEYER:  -- circulate it to counsel and then
13   provide it to the Court.
14              THE COURT:  Thank you, everyone.  I like this
15   method.  Thank you for a designated thing.
16              MS. BASS:  Thank you, Your Honor.
17              THE COURT:  All right.  Oh, God.
18              MS. MEYER:  Oh, Your Honor --
19              THE COURT:  Oh, no.
20              MS. MEYER:  I'm sorry.  We're not done.
21              THE COURT:  I need to get an ejection seat and get
22   out of here real quick.
23              MS. MEYER:  Your Honor?
24              THE COURT:  Yes.
25              MS. MEYER:  As the Court mentioned, no one's going
```

```
 1   to be up against it in terms of trial dates, so I would like on
 2   the record every defendant and --
 3              THE COURT:  To waive time.
 4              MS. MEYER:  -- and defense counsel to waive time.
 5       We had proposed trial dates for every case besides the
 6   last one, 15-701.  I believe -- and again, counsel will correct
 7   me if I am mistaken -- there's only one objection on the 15-662
 8   case.
 9       So would the Court like to call 14-702?  We're talking
10   about a trial date of November 1st.
11       Your Honor, Ms. Bass is saying that she doesn't have her
12   client's permission.  But I would like to -- whoever -- huh?
13              MS. BASS:  Yes.
14              MS. MEYER:  Yes.
15              THE COURT:  I don't see it -- I don't see this as a
16   problem.
17              MS. MEYER:  No?
18              THE COURT:  This is -- what we're doing here is
19   something at the request of the defendants.
20              MS. MEYER:  I agree.
21              THE COURT:  Now, if they're -- is anyone somehow --
22   any of the lawyers here in any way opposed to us believing that
23   this falls within one of those circumstances where this is,
24   indeed, excludable time?  A reasonable period of time is going
25   to be excludable time because of the necessity to give you what
```

1    you want.

2           MS. BASS:  Your Honor, none of us are going to

3    object too much about excludable time or speedy trial.

4       There's only one individual who has an issue as far as

5    putting out the trial as far as the government is suggesting:

6    Mr. Gelberg.  But other than that, we are all fine with the

7    very distant trial date.

8           THE COURT:  Thank you.  Yes, sir?

9           MR. GELBERG:  Thank you, Your Honor.

10      And to be clear -- sorry.  Grant Gelberg on behalf of

11   Defendant Jack Nguyen in case -662.

12      To be clear, we have no objection to finding of some

13   excludable time for these issues.  Our objection is to the

14   length of the proposed continuance.  The discussions with the

15   government, it was one year to January 2017, and that's too

16   long from my perspective and from my client's perspective

17   without having the opportunity to see the discovery because my

18   client is named in only a very small portion of this case.

19   He's alleged that he attended three meetings in -- as part of

20   one of the seven conspiracies that are charged.

21      Much of this discovery, I believe, is going to be

22   irrelevant to preparing our defense, and I can't make a

23   judgment that it's appropriate to continue the case for

24   12 months without having the opportunity to see it.

25         We've made two discovery requests of the government, and I

understand these are complicated issues.  But I have said to

the prosecutors that I'm willing to abide by their version of

the proposed protective order so that I can see the discovery

so that I can make an assessment about the appropriate length

of the continuance.

THE COURT:  I don't think you are really concerned

about the length of the continuance.  What you have just

described to me, you're going to be the first one up.  I'll be

in here taking your client's plea in a week or two.  All right?

So I don't think that's really something we need to concern

ourselves with.  It doesn't sound like your client's going to

trial.

MR. GELBERG:  Well, Your Honor --

THE COURT:  Did I just fall off the turnip truck or

what?

MR. GELBERG:  Your Honor, respectfully, we don't

know that.  I think there are real issues here that need to be

explored.

THE COURT:  Okay.  All right.  I hear you.  Well,

we -- let's cross that bridge when we get there.

MR. GELBERG:  And that's my only point is I'm not

objecting to a reasonable continuance to give us time to deal

with these issues, give us time to assess the problem.  Is if

we continue out for a year --

THE COURT:  What do you think is going to be

```
 1   reasonable under the circumstances?

 2             MR. GELBERG:  We -- I had proposed as a first

 3   step --

 4             THE COURT:  No.  I'm talking about for the

 5   government to do what the government is now going to have to

 6   do.

 7             MR. GELBERG:  Well, the government doesn't know

 8   exactly what's going to be involved, so I'm not --

 9             THE COURT:  And nor do you.  So what -- when we

10   start talking about a reasonable continuance, what is that

11   precisely?  Or even generally?

12             MR. GELBERG:  I had proposed to start with late

13   April, early May.

14             THE COURT:  Which April?

15             MR. GELBERG:  This one, to start with.  I

16   understand.  And that's not to say we don't revisit the issue.

17   But from -- that was our request.

18             THE COURT:  Okay.  Good.  It's nice talking to you.

19             MR. GELBERG:  Thank you, Your Honor.

20             THE COURT:  All right.  Anything else we need to

21   talk about?  You're going to -- you're going to -- well, you

22   got a lot of work to do.

23             MS. MEYER:  Yes, Your Honor.

24             THE COURT:  Why don't you go do it?

25             MS. MEYER:  Agreed.
```

1          THE COURT:  Thank you, all.

2          THE COURTROOM DEPUTY:  This Court is adjourned.

3          (Proceedings concluded at 4:11 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, DEBRA READ, FEDERAL OFFICIAL REALTIME COURT REPORTER,

4    IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

5    DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO

6    SECTION 753, TITLE 28, UNITED STATES CODE, THAT THE FOREGOING

7    IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

8    REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

9    THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

10   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

11

12          Dated this 1st day of November, 2019.

13

14

15          /S/ Debra Read

16          DEBRA READ, CSR CRR RMR RDR
            FEDERAL OFFICIAL COURT REPORTER
17

18

19

20

21

22

23

24

25